| **SC Philips Clark LLC v Shore Club Prop. Owner LLC** |
|:---:|
| 2026 NY Slip Op 30907(U) |
| March 12, 2026 |
| Supreme Court, New York County |
| Docket Number: Index No. 652489/2022 |
| Judge: Anar Rathod Patel |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK:  COMMERCIAL DIVISION PART 45

-------------------------------------------------------------------X

SC Philips Clark LLC

                                      Plaintiff,

                 - v -

Shore Club Property Owner LLC, Monroe Capital
LLC, The Witkoff Group LLC

                                   Defendants.

-------------------------------------------------------------------X

| | |
|---|---|
| **INDEX NO.** | 652489/2022 |
| **MOTION DATE** | 12/16/2025 |
| **MOTION SEQ. NO.** | 006 |

**DECISION + ORDER ON MOTION**

**HON. ANAR RATHOD PATEL:**

The following e-filed documents, listed by NYSCEF document number (Motion 006) 179–189, 196–206, 208–226 were read on this motion to <u>AMEND CAPTION/PLEADINGS</u>.

Plaintiff SC Philips Clark ("Philips") moves for leave to file an Amended Complaint pursuant to CPLR § 3025(b) against Defendants Shore Club Property Owner LLC ("Shore Club Owner"), Monroe Capital LLC ("Monroe"), and The Witkoff Group LLC ("Witkoff") (collectively, "Defendants").  Defendants oppose the motion.  For the reasons as set forth herein, Plaintiff's Motion is GRANTED.

<u>**Relevant Factual and Procedural Background**</u>

This action arises from a complex commercial real estate transaction involving the Shore Club Hotel, a luxury beachfront property in Miami, Florida (the "Property").  An affiliate of Plaintiff originally owned the Property.  However, after a mortgage default, and series of failed financial restructuring events, Plaintiff and its affiliate agreed to cede control of the Property, along with their equity stake, to Defendants.  Compl. at ¶¶ 5, 36, 41–42.  In consideration, Plaintiff and a non-party affiliate entered into a Profit Participation Agreement ("PPA") with Defendants and other non-parties.  Compl. at ¶¶ 7–9, 41–43.  Plaintiff subsequently transferred the Property deed to Shore Club Owner, and, in return, Plaintiff contractually received: (1) profit participation rights; (2) certain approval rights; and (3) contingent future equity rights in the Property.  Compl. at ¶¶ 48–49.  After continued decline in financial performance, an affiliate of Defendant Monroe conducted a strict foreclosure of the Property in May 2021.  Compl. at ¶ 14.  Plaintiff alleges that additional restructuring events occurred that breached PPA provisions by, *inter alia*, moving all valuable Property assets to other entities, and leaving Plaintiff with worthless holdings in shell entities. Compl. at ¶¶ 64–68.  Plaintiff alleges financial improprieties by Defendants related to the Property. Compl. at ¶¶ 12–14.  Plaintiff also alleges the foreclosure process was part of a "scheme" by Defendants and their affiliates to deprive Plaintiff of their bargained-for-rights pursuant to the PPA (the "Monroe-Witkoff Scheme").  *Id.*

Plaintiff commenced this action in July 2022 by filing the Summons (NYSCEF Doc. No. 1) and Complaint (NYSCEF Doc. No. 2, "Compl.") alleging seven causes of action against Defendants: (I–II) breach of contract as against Shore Club Owner; (III) breach of the implied covenant of good faith and fair dealing as against Shore Club Owner; (IV) tortious interference with contract as against Monroe and Witkoff; (V) tortious interference with prospective economic advantage as against Monroe and Witkoff; (VI) aiding and abetting tortious interference with contract as against Witkoff; and (VII) aiding and abetting tortious interference with prospective economic relations as against Witkoff. Defendants subsequently filed a Motion to Dismiss (NYSCEF Doc. No. 14) that the Court (Masley, J.) granted in part, dismissing the first, second, and third causes of action in their entirety, and portions of the remaining four causes of action. NYSCEF Doc. No. 41 at 40–41 ("7/10/24 Decision and Order"). Specifically, the Court held that Plaintiff failed to state a claim as follows:

- Counts I–III (dismissed) – For breach of contract and breach of the implied covenant of good faith and fair dealing as against Shore Club Owner because the PPA permitted the alleged conduct, and certain allegations were conclusory.

- Counts IV and VI (dismissed, in part) – For tortious interference with contract against Defendants Monroe and Witkoff and aiding and abetting tortious interference with contract against Witkoff because the PPA allowed the alleged actions (however, allegations premised on the initial procurement of HFZ's pledge of its interest in the Shore Club Entities and the subsequent assignments of these interests to Monroe survive).

- Counts V and VII (dismissed, in part) – For tortious interference with prospective economic advantage against Defendants Monroe and Witkoff and aiding and abetting tortious interference with prospective economic relations against Defendant Witkoff because there is not an independent tort identified in the allegations (however, allegations premised upon tortious interference with the PPA survive).

The Proposed Amended Complaint (NYSCEF Doc. No. 182, "PAC") alleges fourteen causes of action: (1) declaratory judgment as to a scrivener's error in the PPA; (2) declaratory judgment as to transactions made pursuant to the PPA; (3) declaratory judgment as to actions taken pursuant to the PPA; (4) declaratory judgment as to new members pursuant to the PPA; (5)–(7) breach of contract against Monroe; (8) breach of the implied covenant of good faith and fair dealing against Monroe; (9) tortious interference with contract against Monroe and Witkoff; (10) tortious interference with prospective economic advantage against Monroe and Witkoff; (11) aiding and abetting tortious interference with contract against Monroe; (12) aiding and abetting tortious interference with prospective economic relations against Monroe; (13) aiding and abetting tortious interference with contract against Witkoff; and (14) aiding and abetting tortious interference with prospective economic relations against Witkoff.

The new and/or re-alleged causes of action in the PAC fall into three general categories:

First, Plaintiff adds Counts I through VIII to the PAC based upon an alleged scrivener's error in Section 3 of the PPA where Plaintiff alleges the drafter mistakenly used "Owner" instead of "Equity Party" (also referred to by Plaintiff as a "mutual mistake"). PAC at ¶¶ 136–261. Plaintiff alleges it only became aware of the scrivener's error after the Court's July 2024 Decision

652489/2022  SC Philips Clark LLC vs. Shore Club Property Owner LLC et al                    Page 2 of 7
Motion No. 006

2 of 7

[* 2]

and Order because of the wording in the PPA that Plaintiff now contests. NYSCEF Doc. No. 188 at 5–6, 14, ("Mem. of Law"); NYSCEF Doc. No. 226 at 5 ("Reply").

Second, Plaintiff requests that the Court pierce the corporate veil of Defendant Monroe, a non-party to the PPA. PAC at ¶¶ 203–261. Plaintiff alleges Monroe exercised dominion and control over various affiliated Property entities and used those affiliates as its alter-ego to purposely harm Plaintiff, and ultimately, deprive it of all contractual equity rights in the Property. *Id.* Specifically, Plaintiff claims an unlawful foreclosure by non-party Shore Club Mezzanine I LLC ("Mezzanine Borrower"), an alleged alter-ego of Monroe. *Id.* The PAC alleges a variety of actions in the foreclosure that require this Court to pierce the corporate veil shielding Monroe including, *inter* alia, self-dealing by Monroe; the use of shared office space, officers, managers, employees, and agents by Monroe and their affiliates; direct control by Monroe on financial transactions related to the Property; lack of documentation regarding corporate formalities between and among affiliated entities; and comingling of Monroe funds with those of its alter-ego entities. *Id.*; Mem. of Law at 11, 14; Reply at 14–16.

Finally, Plaintiff asserts claims against Defendant Monroe in Counts XI and XII for aiding and abetting Defendant Witkoff in the Monroe-Witkoff Scheme by tortiously interfering with the PPA contract, and prospective economic relations by, *inter alia*, unlawfully transferring Property interests to John Shannon and Nir Meir, both principals of developer HFZ, and then subsequently transferring them to Monroe; plotting to extinguish Plaintiff's interests in the Property through the foreclosure; interfering with Plaintiff's contractual relationships with various Property affiliates; and replacing HFZ in bad faith as developer of the Property to force various restructuring events— including the strict foreclosure. Mem. of Law at 9–11; PAC at ¶¶ 277–288.

## Legal Discussion

The decision "[w]hether to grant an amendment is committed to the discretion of the court." *Ferrer v. Go N.Y. Tours Inc.*, 221 A.D.3d 449, 500 (1st Dept. 2023) (internal citation omitted). On a motion for leave to amend, the "plaintiff need not establish the merit of its proposed new allegations[,] but simply show that the proffered amendment is not palpably insufficient or clearly devoid of merit." *MBIA Ins. Corp. v. Greystone & Co., Inc.*, 74 A.D.3d 499, 500 (1st Dept. 2010) (internal citations omitted). "Leave [to amend a complaint] shall be freely given upon such terms as may be just." CPLR § 3025(b). The First Department has held that a court shall grant a motion to amend even if the facts could have "been discovered earlier and may be time-barred under the statute of limitations [because it] is a fact-intensive inquiry that should be resolved on a fuller record." *Bd. of Mgrs. of the 432 Park Condo. et al. v. 56th and Park (N.Y.) Owner, LLC et al.* 2025–02927, 2026 WL 363096 at *2 (1st Dept. 2016).

Delay in "seeking to amend a pleading does not warrant denial of the motion, in the absence of prejudice." *Cherebin v. Empress Ambulance Serv., Inc.,* 43 A.D.3d 364, 365 (1st Dept. 2007). To deny a motion to amend "requires 'some indication that the [opposing party] has been hindered in the preparation of [its] case or has been prevented from taking some measure in support of [its] position.'" *Kocourek v. BoozAllen Hamilton Inc.*, 85 A.D.3d 502, 504 (1st Dept. 2011). Claims of prejudice due to "additional discovery costs" are "insufficient" to deny the motion. *Tri-Tec Design, Inc., v. Zatek Corp.*, 123 A.D.3d 420, 420 (1st Dept. 2014). Although amendment in a complex action may require costly additional discovery, the First Department held that "the need

for additional discovery pre-note of issue is insufficient to show prejudice for the purpose of denying leave to amend under CPLR 3025(b) (*see e.g., Shareholder Representative Servs. LLC v. NASDAQ OMX Group, Inc.*, 176 A.D.3d 632, 633 [1st Dept. 2019])." *Bd. of Mgrs. of the 432 Park Condo. et al.*, 2026 WL 363096 at *1.

*Prejudice and Delay*

Defendants claim that allowing Plaintiff to amend its Complaint results in undue prejudice from both inexcusable delay in requesting the amendment, and the resulting burden imposed on Defendants to engage in additional, costly discovery. Defs.' Opp'n at 7. Defendants argue that they "would have approached motion practice, discovery, expert preparation, and litigation strategy differently" had Plaintiff timely pled these additional allegations when they received the information necessary to file the Motion to Amend. *Id.* at 7, 13. Defendants specifically reference the additional eight claims Plaintiff brings resulting from the alleged scrivener's error in Section 3 of the PPA. Defs.' Opp'n at 10. Defendants state that the Court (Masley, J.) dismissed all claims in the original Complaint related to allegations involving PPA Section 3; however, Plaintiff waited eighteen months until the close of discovery even though it acknowledged that it became aware of the scrivener's error in July 2024, when the Court issued its Decision. Defs.' Mem. of Law at 6, 9; Reply at 11–12. Plaintiff rebuts that it waited until after the deposition of HFZ's signatory to the PPA on November 18, 2025, to confirm the relevant facts, and timely brought the instant motion four weeks post-deposition. *Id.*

Plaintiff primarily argues that facts obtained through ongoing discovery provide sufficient evidence to support the new or re-alleged facts in the PAC. Mem. of Law at 4–5. The Court recognizes that discovery has closed, and therefore, providing leave for Plaintiff to file the PAC involves additional discovery, and a financial cost to the parties. However, the Court takes notice that Plaintiff has not yet filed the note of issue. In their opposition, Defendants cite *Perez v. N.Y.C. Health & Hosps. Corp.*, 226 A.D.3d 602 (1st Dept. 2024) as precedent for denying a motion for leave to amend after parties expended significant funds in discovery, and the court, as in the instant case, provided a deadline for filing the note of issue. However, although *Perez*, a medical malpractice action considered prejudicial factors not present in, or relevant to, the instant case—including lack of a required Notice of Claim against government entities for proposed additional defendants, lack of excuse or reasonable justification for the delay, and the passage of twelve years between the original complaint and the motion to amend.

In contrast, Plaintiff offers a reasonable excuse for not seeking to amend the Complaint sooner. Plaintiff claims it "properly waited until [it was] able to obtain discovery." Mem. of Law at 5. The First Department held that late claims are accepted when a party "did not seek to amend the . . . claims until they had obtained evidence of defendants' alleged scienter. . ." *Sheets v. Liberty Alls., LLC*, 37 A.D.3d 170, 171 (1st Dept. 2007). Consistent with *Ferrer*, the Court, as a matter of law, has significant discretion in deciding whether to grant a motion to amend a complaint. The First Department has upheld amendments to pleadings even after the filing of a note of issue, when a party offered a reasonable excuse explaining the timing of the motion to amend and, as here, waited until supplemental disclosure transformed a "suspicion" into a "demonstrable claim." *Id.* at 171.

652489/2022  SC Philips Clark LLC vs. Shore Club Property Owner LLC et al                    Page 4 of 7
Motion No. 006

4 of 7

[* 4]

Defendants provide no indication that they no longer have access to relevant documents or witnesses required to defend against the new allegations in the PAC. Although Defendants argue that they would have adopted a different litigation strategy and tailored their discovery strategy differently had they known about the additional claims, they do not argue that a delay in Plaintiff's pleading prevents them from taking a different discovery or litigation position post-amendment. *Id.*

Additionally, there were adjournments of key depositions and other time-consuming discovery disputes during the pendency of this action leading the Court to extend discovery deadlines in an Amended Preliminary Conference Order on October 31, 2025, that pushed the deadline for depositions from June 25, 2025 to November 26, 2025. *See e.g.,* NYSCEF Doc. Nos. 69, 71–73, 171. Plaintiff argues that information from the final deponent was necessary to ensure it had all relevant facts prior to filing this Motion. The Court therefore finds that the delay in adding the additional causes of action is reasonably excusable and, although inconvenient, not prejudicial to Defendants.

*Merits of Plaintiff's Amended Claims*

Counts I through VIII in the PAC hinge on whether there was a scrivener's error in the PPA. This Court (Masley, J.) previously dismissed all causes of action related to Section 3 of the PPA because Plaintiff was not an "Owner" as defined within the PPA. However, assuming, *arguendo*, that Section 3 of the PPA, substitutes the term "Equity Party" instead of "Owner," the Plaintiff gains rights not recognized by the Court when it previously dismissed certain causes of action in the original Complaint.

Plaintiff argues a "mutual mistake" in Section 3 of the PPA when the drafter inserted the term "Owner" as opposed to the intended term "Equity Parties." *Id.* at 6. Substitution of "Equity Parties" alters the meaning of Section 3 and provides additional rights to Plaintiff in its role as a non-owner equity party. Plaintiff argues that had Justice Masley relied on a PPA incorporating the intended meaning of the parties, the claims dismissed as a result of the defined term "Owners" in Section 3 would have survived.

Defendant, however, asserts that any claim allegedly involving a mutual mistake is time-barred as of December 30, 2019, pursuant to the six-year statute of limitations in CPLR § 213(6) that ran from December 30, 2013, when the parties signed the PPA. Defs.' Opp'n at 6. Plaintiff does not dispute the statute of limitations expiration but instead argues that the statute of limitations applies only to contract reformation. Plaintiff argues that it does not seek reformation of the PPA, but instead a contractual interpretation of the PPA, centered on the intent of the parties when drafting the PPA. Reply at 7. A court "may correct a scrivener's error outside of a claim for reformation of a contract in those limited instances where some absurdity has been identified or the contract would otherwise be unenforceable either in whole or in part." *NCCMI, Inc. v. Bersin Props., LLC*, 226 A.D.3d 88, 93–94 (1st Dept. 2024).

Although Defendants argue that the current reading of Section 3 is not "absurd," Plaintiff disagrees, as it places a burden on "Owner" to obtain Plaintiff's consent for actions taken by entities over whom "Owner" does not have any control. Reply at 8. Therefore, the current reading would obliterate Plaintiff's bargained-for approval rights for specific actions by affiliated parties

under the PPA and render Section 3(b) unenforceable. Reply at 8. In opposition, Defendants claim that it is possible that the parties to the PPA sought to limit the rights of Plaintiff, given the complex organizational structure present in the transaction and accordingly drafted the provision as written. Defs.' Opp'n at 18–19.

Defendants also argue that the allegations of a "mutual mistake" are based upon "limited testimony" from Plaintiff's former counsel and do not contain sufficient factual allegations. *Id.* at 11. However, Plaintiff responds by citing deposition testimony from the drafting attorney, Ronald Kriss, that it was "probable" that the disputed term "Owner" should have been "written as Equity Partners." Reply at 10; NYSCEF Doc. No. 221 at 3 ("Dep. of R. Kriss").

Given the procedural history of this action, the number of parties and non-parties, the complex underlying real estate transaction, the volume of documents produced in discovery, and the number of interactions between the parties, it is not possible on the current record for the Court to determine whether the reading of the PPA, as currently written, is "absurd." The allegations in Counts I through VIII related to a scrivener's error are not palpably insufficient or devoid of merit, but require a fact-intensive inquiry and a more fulsome record.

Counts V–VIII in the PAC include allegations that the conduct of Monroe and other affiliates requires the Court to disregard Monroe's formal corporate entity and pierce its corporate veil. Determination of veil piercing is a fact intensive inquiry that requires the Court to take numerous factors into account, *inter alia*, "whether there is an overlap in ownership, officers, directors, and personnel, inadequate capitalization, a commingling of assets, or an absence of separate paraphernalia that are part of the corporate form." *HLI Rail & Rigging, LLC v. Franklin Exhibit Mgmt. Grp., LLC,* 237 A.D.3d 1071, 1073 (2d Dept. 2025). Defendants argue that Plaintiff's allegations that Monroe "so dominated the Sponsor and other Shore Club entities" that it is liable for breaching the PPA, unlawfully enforcing the mezzanine loan, and causing the Property foreclosure cannot stand under PPA Section 22. Defs.' Opp'n at 15–16. Defendants claim that Section 22 subordinates the PPA to the at-issue mezzanine loan, and this Court (J. Masley) previously dismissed a claim in the original Complaint stating that "strict foreclosure on that loan could not be in breach of the PPA." 7/10/24 Decision and Order at 19. Plaintiff argues that additional facts involving Monroe's alter egos and related conduct was not known or presented to the Court at the time of the Decision. *See e.g.* PAC ¶¶ 210–211. As reasoned *supra*, the Court requires a broader fact-based record to determine whether these claims survive, but Plaintiff has met the standard to amend the complaint as to veil piercing in Counts V–VII.

Lastly, Plaintiff adds claims at Counts XI and XII conditioned upon information obtained during discovery indicating that Defendants Monroe and Witkoff allegedly conspired to provide false information to Plaintiff with respect to Property ownership and assignments of rights, and took certain actions, such as replacing HFZ as the Property developer, to tortiously interfere with the rights of Plaintiff. Previously, this Court (J. Masley) denied Defendants' Motion to Dismiss causes of action against Witkoff for aiding and abetting tortious interference with contract (insofar as the cause of action relates to the PPA); and aiding and abetting tortious interference with prospective economic relations (insofar as the cause of action relates to the PPA). 7/10/24 Decision and Order at 30–34, 40–41. Plaintiff now alleges that actions by Monroe, including some effectuated through alter-egos, violated Section 17 of the PPA. Reply at 16. Plaintiff specifically alleges that transfers of interest in the Property to Shannon and Meir was part of a "long-planned

[* 6]

plot" for Monroe to foreclose on the Property to the detriment of Plaintiff. Mem. of Law at 11. Plaintiff claims it based the original Complaint on the Affidavit of Monroe Managing Director Kyle Asher (NYSCEF Doc. No. 8, "Asher Aff.") that incorrectly detailed the organizational and ownership structure of the Property at and around the time of foreclosure. *Id.* at 4, 10–11.

Defendants argue that language in these new causes of action are a "cut-and-paste" from allegations against Witkoff in the original Complaint and Plaintiff simply substituted Monroe instead of Witkoff. Defs.' Opp'n at 26. This argument is inapposite, as Plaintiff alleges additional information currently in its possession with respect to the Monroe-Witkoff Scheme that revealed the extent of the conspiratorial actions between Monroe and Witkoff that Plaintiff was unaware of when filing the original Complaint.

The Court finds the allegations in the PAC are neither "palpably insufficient" or "clearly devoid of merit," and therefore, GRANTS Plaintiff's Motion to File the Amended Complaint.

The Court has considered the parties' remaining arguments and finds them to be unavailing.

Accordingly, it is hereby:

**ORDERED** that Plaintiff's Motion for Leave to File the Amended Complaint (Mot. Seq. 006) is GRANTED; and it is further

**ORDERED** that Plaintiff shall e-file the Amended Complaint within seven (7) days of this Decision and Order; and it is further

**ORDERED** that Defendants shall answer, or otherwise respond to, the Amended Complaint within twenty (20) days of the e-filing of this Decision and Order; and it is further

**ORDERED** that the parties shall meet and confer and file an Amended Preliminary Conference Order within twenty (20) days of the e-filing of this Decision and Order.

| | |
|---|---|
| **March 12, 2026** | *A. R. Patel* |
| **DATE** | **ANAR RATHOD PATEL, A.J.S.C.** |

| CHECK ONE: | | CASE DISPOSED | | X | NON-FINAL DISPOSITION | | |
|---|---|---|---|---|---|---|---|
| | X | GRANTED | | DENIED | | GRANTED IN PART | | OTHER |
| APPLICATION: | | SETTLE ORDER | | | SUBMIT ORDER | | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | FIDUCIARY APPOINTMENT | | REFERENCE |

[* 7]